**Lois FOUSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 38458.

Court of Criminal Appeals of Texas.

Oct. 27, 1965.

Rehearing Denied Dec. 15, 1965.

Houston McMurry, Henrietta, for appellant.

Clyde Suddath, County Atty., Henrietta, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for burglary with a prior conviction for burglary alleged for enhancement; the punishment, twelve years.

The appellant challenges the sufficiency of the evidence to show that he committed the primary offense as alleged.

Floyd Langford left a farm house which he owned about 10 A.M., October 24, 1964, in a pickup going to a cattle auction. He was accompanied by his brother, Lloyd. The house and the smokehouse nearby contained personal property. The houses were closed at the time they left and it would be necessary to open a door, window or other place to enter the houses. A gate was located on a road about one-fourth mile from the highway which led to the houses about three-fourths of a mile from the highway. When the Langfords, driving separate pickups, returned about 4 P.M., October 24, they saw, from the gate, an automobile parked in front of the house with the "turtle shell" up which was soon closed by one of two men who got in the car and came to the gate. Lloyd, who was ahead of Floyd, got out of his pickup and went to the car which he stopped at the gate. Lloyd further testified:

"A Well, I asked him what they were doing down there, and this fellow (appellant) never did say a word, but the young boy said they were looking for his uncle. I forget his name. It was Meredith, or something. I told him, I said, 'Well, I don't live here. The place belongs to my brother. You can ask him.' He said, 'Well, we will ask him.' And so I just kind of started up, and I looked back and they didn't stop. They turned east down the dead lane, and then came back, and then my brother went over there and talked to them.

\* \* \* \* \* \*

"A Yes, sir. My brother came back and told me, said they were going to Henrietta, said they would find his uncle, and I said, 'I believe I will turn around and follow them and see if they go to Henrietta,' and I followed them to the railroad track, and he turned east."

Floyd Langford testified in part as follows:

"Q Did you or your brother block the gate?

"A Yes, he was parked in the gate. In fact, he was in the road, and they pulled out around him just a little, and stopped to talk to him first, and they were hunting a guy by the name of Meredith.

\* \* \* \* \* \*

"A My brother says 'Them birds didn't stop and talk to you, did they?'

I said 'No.' He said, 'Well, they were wanting to know where a guy by the name of Meredith lived,' and he told them this place belonged to his brother and they could find out from him. But instead of turning towards the highway, they turned east and went into a dead-end lane, and they came back, and that is when I stopped them; headed them off and talked to them.

\* \* \* \* \* \*

"Q I will ask you to observe the defendant here and tell the jury if he is the man who was driving that car on that date?

"A Yes, sir.

"Q Have you seen him several times since then?

"A Twice since then.

"Q And you now tell the jury that he was the man driving the automobile at that time?

"A Yes, sir.

\* \* \* \* \* \*

"Q He was hunting a man named Meredith?

"A Yes, and said it was his uncle; that he had moved from Dallas up there about a month ago, \* \* \*.

\* \* \* \* \* \*

"Q Did you ever hear of anyone by the name of Meredith that lived out in that neighborhood in there?

"A No, sir.

"Q Do you know all your neighbors out there?

"A Yes, sir.

\* \* \* \* \* \*

"A The young fellow said they were going back to Henrietta and see if they could find his uncle in Henrietta.

"Q Where did they go?

"A They turned back down the Fort Worth highway.

"Q Was that towards Henrietta?

"A No; away from Henrietta.

\* \* \* \* \* \*

"Q Did you find any evidence of anybody having walked around?

"A Yes, sir.

"Q What did you see?

"A I found two sets of foot tracks, and the print of a gas can that they set down at the gate where they got my gas.

"Q Those tracks, where did they go?

"A From the house to the barn and to the smokehouse.

"Q Two sets of footprints?

"A Yes.

"Q Were they your footprints, or your brother's?

"A No, sir.

"Q They were made after you left that morning?

"A Yes, sir."

Floyd testified that he owned several pieces of personal property which were in the houses before he left in the morning and which were missing from the houses when he returned about 4 P.M., and that he did not give anyone his consent to open and enter the houses or to take any of the property from them.

From a description of the car given by the Langfords to the officers, the appellant was arrested.

Proof was introduced of the prior conviction for burglary as alleged and of the identity of the appellant as the same person so convicted.

The appellant did not testify but called three witnesses whose testimony reflects

that he was in Dallas at the time that the primary offense here charged was alleged to have been committed in Clay County.

The court charged the jury on alibi and upon the law applicable to circumstantial evidence.

The jury resolved the conflict in the testimony against the appellant, and the evidence is sufficient to support the conviction. Lawson v. State, 160 Tex.Cr.R. 559, 273 S.W.2d 75.

The judgment is affirmed.

Opinion approved by the Court.